UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OMAR KHAN, et al. | § | |
| | § | |
| vs. | § | Civil Action No. 4:20-cv-01178 |
| | § | |
| CINEMEX USA REAL ESTATE | § | Hon. Andrew S. Hanen |
| HOLDINGS, INC., et al. | § | |

## MOTION TO DISMISS PLAINTIFFS' VERIFIED ORIGINAL COMPLAINT

## **TABLE OF CONTENTS**

**Page**

STATEMENT OF THE ISSUES ................................................................................1

SUMMARY OF THE ARGUMENT ........................................................................1

STATEMENT OF FACTS .......................................................................................2

    A.    The Bidding Process ........................................................................2

    B.    The March 2020 Equity Purchase Agreements .............................3

    C.    The COVID-19 Crisis In The United States And Impact On The Movie Theater Industry ..................................................................4

    D.    The Status Of The EPA .................................................................6

NATURE AND STAGE OF PROCEEDINGS ........................................................7

LEGAL STANDARD ..............................................................................................8

I.    PLAINTIFFS FAILED TO SATISFY CONDITIONS PRECEDENT TO CLOSING ......................................................................................................8

    A.    Plaintiffs Failed To Provide Reasonable Access To Property And Employees, As Required By Sections 7.2 And 7.9 ................9

    B.    Plaintiffs Breached Their Obligation To Provide Truthful Representations And Warranties ....................................................12

II.    FRUSTRATION OF PURPOSE AND IMPOSSIBILITY EXCUSE CINEMEX'S PERFORMANCE ............................................................................................15

    A.    The Purpose Of The Agreements Has Been Frustrated By The Closures Of Plaintiffs' Business, And Thus Cinemex Is Not Obligated To Close ..................15

    B.    Cinemex Has No Obligation To Close Because Performance Of The Agreements Is Impossible ......................................................18

CONCLUSION ......................................................................................................19

## **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*Achaian, Inc. v. Leemon Family LLC*,
25 A.3d 800 (Del. Ch. 2011) ............................................................................... 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................ 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................ 8

*Bell Atl. Dir. Servs., Inc. v. Delaware Law Ctr., Inc.*,
No. CRIM.A.1997-07-083, 2000 WL 33654061 (Del. Com. Pl. Dec. 14, 2000) ............... 18

*Chase Manhattan Bank v. Iridium Africa Corp.*,
474 F. Supp. 2d 613 (D. Del. 2007)............................................................... 16, 17

*Cuvillier v. Taylor*,
503 F.3d 397 (5th Cir. 2007) ................................................................................. 8

*Greek Catholic Congregation of Borough of Olyphant v. Plummer*,
12 A.2d 435 (Pa. 1940)........................................................................................ 16

*Kroblin Refrigerated Xpress, Inc. v. Pitterich*,
805 F.2d 96 (3d Cir. 1986) .................................................................................. 17

*Little v. SKF Sverige AB*,
No. H–13–1760, 2014 WL 710941 (S.D. Tex. Feb. 24, 2014) .............................. 8

*Martin v. Star Publishing Co.*,
126 A.2d 238 (Del. 1956) .................................................................................... 18

*Mueller v. Marvel*,
No. 03-07-110, 2004 WL 7325622 (Del. Com. Pl. Dec. 8, 2004)........................ 18

*Munro v. Beazer Home Corp.*,
No. CIV. U608-03-081, 2011 WL 2651910 (Del. Com. Pl. June 23, 2011).................... 8, 10

*Novipax Holdings LLC v. Sealed Air Corp.*,
No. N17C-03-1682 EMD CCLD, 2017 WL 5713307 (Del. Super. Ct. Nov. 28, 2017)................................................................................................................ 10

*R2 Invs. LDC v. Phillips*,
401 F.3d 638 (5th Cir. 2005) ................................................................................. 8

## TABLE OF AUTHORITIES (CONT'D)

**Page**

### Cases

*Randall D. Wolcott, M.D., P.A. v. Sebelius*,
635 F.3d 757 (5th Cir. 2011) ................................................................................. 8

*Rhines v. Alinas Constr. Techs., Ltd.*,
No. C–11–262, 2011 WL 4688706 (S.D. Tex. Oct. 3, 2011) ................................. 2

*Sch. Dist. No. 16 of Sherman Cty. v. Howard*,
98 N.W. 666 (Neb. 1904) ..................................................................................... 16

*Texas Co. v. Hogarth Shipping Corp.*,
256 U.S. 619 (1921) ............................................................................................. 15

*Toscano v. United Parcel Service*,
No. 4:14-CV-2680, 2015 WL 2089660 (S.D. Tex. Apr. 28, 2015) ....................... 8

*Unihealth v. U.S. Healthcare, Inc.*,
14 F. Supp. 2d 623 (D.N.J. 1998) ........................................................................ 15

*United States ex rel. Lam v. Tenet Healthcare Corp.*,
481 F. Supp. 2d 673 (W.D. Tex. 2006) .................................................................. 2

*Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*,
872 A.2d 611 (Del. Ch. 2005), *aff'd in part, rev'd in part on other grounds*, 901
A.2d 106 (Del. 2006) ........................................................................................... 15

### Other Authorities

Restatement Contracts § 454 (1932) ......................................................................... 18

Restatement (Second) of Contracts § 265 (1981) .................................................... 16

## STATEMENT OF THE ISSUES

1.      Did Plaintiffs fail to state a claim for breach of contract where they failed to provide actual access to their property and employees until the date of closing and failed to truthfully represent that they have authority to operate their business, both of which are conditions precedent to closing?

2.      Did Plaintiffs fail to state a claim for breach of contract where the agreements presume the existence of an available, functioning business that will be sold, and thus the purpose of the agreements has been frustrated and performance is impossible?

## SUMMARY OF THE ARGUMENT

Plaintiffs bring a single claim for breach of contract on the theory that Defendants Cinemex Holdings USA, Inc. ("Cinemex Holdings"), and its parent company, Cinemex USA Real Estate Holdings, Inc. ("Cinemex Real Estate") (together, "Cinemex") cannot rely on the COVID-19 global pandemic to refuse an immediate closing of the sale of Plaintiffs' movie theater business. Yet Plaintiffs themselves rely on the pandemic to excuse their own failures to meet conditions precedent to the closing. In particular, Plaintiffs were required to provide reasonable access to their properties and employees until closing. They were also required to represent truthfully that they are authorized to operate their business until closing. But both of these conditions precedent were not satisfied because governmental orders precluded access to the properties and employees before closing, and Plaintiffs do not have authority to operate their movie theaters. The agreements do not treat a pandemic as an excuse for the failure to meet these conditions precedent, and there is certainly no basis to imply such an excuse for Plaintiffs while simultaneously refusing to recognize the impact of the pandemic on Cinemex's contractual obligations. While Plaintiffs rely on the statement in the agreements that a pandemic is not a Material Adverse Effect, the requirement to provide access does not depend on the existence of a Material Adverse Effect. And

while the requirement to provide truthful representations and warranties does mention Material Adverse Effect, it expressly disregards any limitations on Material Adverse Effect, which includes the pandemic limitation.  Accordingly, because the conditions precedent to closing have not been satisfied, Cinemex did not breach the contract by refusing to proceed with the closing.

Furthermore, Plaintiffs cannot enforce the agreements based on the doctrines of frustration of purpose and impossibility.  The simple fact, apparent from the agreements themselves, is that the parties expected to close the sale of functioning, available movie theaters from Plaintiffs to Cinemex.  Whatever the parties thought about the prospect of a pandemic, they plainly did not envision an indefinite, government-enforced shutdown of the theaters that are the very subject of this sale.  Thus, Cinemex did not breach the agreements because the shutdown of the movie theaters has frustrated the purpose of the agreements and has rendered several provisions of the agreement impossible.

## STATEMENT OF FACTS

For purposes of this motion to dismiss, we accept the factual allegations of the Complaint as true, and the relevant facts are described below.[1]

### A.     The Bidding Process

On or around December 19, 2019, Cinemex, Delaware corporations that own and operate movie theaters in the United States, received an initial process letter from Star Cinema Grill ("SCG"),[2] a Houston-based dine-in movie theater company owned by Plaintiff Omar Khan

---

[1]  This Court can also take judicial notice of facts not subject to reasonable dispute and matters of public record in the government orders and newspaper articles discussed below.  *See, e.g.*, *United States ex rel. Lam v. Tenet Healthcare Corp.*, 481 F. Supp. 2d 673, 680 (W.D. Tex. 2006); *Rhines v. Alinas Constr. Techs., Ltd.*, No. C–11–262, 2011 WL 4688706, at *2 n.2 (S.D. Tex. Oct. 3, 2011).

[2]   SCG encompasses the following Plaintiff entities: S.C.G.C. Inc., S.C.G.M. Inc., SCG-B Inc., SCG-VP Inc., District Theaters Inc., SCG-WR LLC, SCG-CS Inc., SCGK Inc., SCG-SW Inc., SCGWL Inc., and SCG-N, Inc.

regarding a potential acquisition of SCG.  (Compl. ¶ 20; Ex. B.)  The parties engaged in a bidding process for approximately 10 weeks.  (Compl. ¶¶ 19-25.)

On or around March 3, 2020, Cinemex submitted a formal offer to purchase the 11 movie theaters owned by Mr. Khan ("SCG Theaters") to PJ Solomon, the investment bank hired by Plaintiffs.  (Compl. ¶¶ 19, 24.)  That same day, the parties began negotiating two equity purchase agreements (together, the "EPA").  (Compl. ¶ 24.)

### B.    The March 2020 Equity Purchase Agreements

On March 10, 2020, Cinemex entered into the EPA with SCG.  (Compl. ¶¶ 2, 31; Exs. A, F.)  The EPA related to Cinemex's purchase of the SCG Theaters (the "Transaction").  (Compl. ¶¶ 2, 31.)  Specifically, one Equity Purchase Agreement governs Cinemex USA's agreement to acquire the 10 SCG Theaters located in Texas (nine existing theaters and one currently under construction) and the other Equity Purchase Agreement governs Cinemex USA's agreement to acquire one SCG Theater located in Illinois.  (Compl. Exs. A, F.)

Having agreed to multi-million dollar agreements in a mere week, Cinemex bargained for robust closing conditions that would enable it to inspect the business to ensure that what it was buying was in fact as advertised.  (Compl. ¶ 36; Exs. A, F.)  Indeed, the EPA contains numerous conditions precedent to closing ("Closing Condition(s)").  Those conditions include requirements that (1) SCG grant Cinemex "reasonable access" and the right to inspect "all of the properties, assets, premises, books and records . . . and other documents and data related to" SCG (EPA § 7.2); (2) SCG grant Cinemex "reasonable access" to "each Corporate Employee,"[3] including to permit Cinemex to interview such employees (*id.* § 7.9); (3) SCG's representations and warranties are

---

[3]  The EPA defines "Corporate Employee[s]" to mean those employed by SCG-AH, Inc. (a corporation registered in Texas and based in the Houston area).

true at the time of the closing, including the representation that SCG was authorized to operate its business (*id.* § 5.16(B)); and (4) no "Material Adverse Effect" ("MAE") as defined in the EPA has occurred (*id.* § 8.1(E)).  (Compl. ¶¶ 36; Exs. A, F.)

### C.   The COVID-19 Crisis In The United States And Impact On The Movie Theater Industry

In the days leading up to March 10, 2020, President Donald Trump repeatedly conveyed to the public that the effects of the COVID-19 outbreak would (and could) be limited. These included the following statements:  (1) "No, I'm not concerned at all.  No, we've done a great job with it."  (March 7, to reporters);[4] and (2) "[W]e're prepared, and we're doing a great job with it.  And it will go away.  Just stay calm.  It will go away."  (March 10, to reporters following a meeting with Republican U.S. Senators).[5]

Only six days later, on March 16, 2020, the U.S. federal government (led by the Centers for Disease Control) issued a set of guidelines aimed at trying to slow the spread of COVID-19 (the "Spread Guidelines").[6]  The Spread Guidelines include avoiding eating or drinking in restaurants and bars.[7]  That same day, the local governments of the City of Houston and Harris County (which encompasses Houston and its surrounding areas) announced that, as of midnight that day, all bars and nightclubs had to close and restaurants could only offer delivery, take-out or

---

[4] *See* Katie Rogers, "Trump Now Claims He Always Knew the Coronavirus Would Be a Pandemic," THE NEW YORK TIMES (March 17, 2020), https://www.nytimes.com/2020/03/17/us/politics/trump-coronavirus.html.

[5] *See* Kathryn Watson "A timeline of what Trump has said on coronavirus," CBS NEWS (Apr. 3, 2020), https://www.cbsnews.com/news/timeline-president-donald-trump-changing-statements-on-coronavirus/.

[6] *See* White House Statements & Releases, "The President's Coronavirus Guidelines for America" (Mar. 16, 2020), https://www.whitehouse.gov/briefings-statements/coronavirus-guidelines-america/.

[7] *Id.*

drive-through services.[8]  The next day, March 17, 2020 (at the latest), SCG announced that it would be closing all of the SCG Theaters "in accordance with local government direction and recommendations."[9]

On March 20, 2020, the State of Illinois issued an order directing people to remain in their homes except for "essential" activities, such as to purchase food from the grocery store or seek medical care, effective March 21.[10]  These orders are generally called "stay-at-home," "lockdown," or "shelter-in-place" orders.

On March 23, 2020, Galveston County (which borders Harris County and surrounding areas outside of Houston) issued a stay-at-home order.[11]  On March 24, 2020, the City of Houston, Harris County, and Fort Bend County (which also borders Harris County and encompasses cities outside of Houston) also issued such orders effective at midnight that day.[12]

On March 29, 2020, President Trump extended the Spread Guidelines, which were set to expire on March 31, by another 30 days (*i.e.*, until April 30).[13]  The next day, on March 30, 2020, the Governor of Texas announced that any persons traveling to Texas from other U.S. cities that

---

[8]  *See, e.g.,* KHOU 11, "County bars must close and restaurants now limited to pickup, delivery services" (Mar. 16 & 17, 2020), https://www.khou.com/article/news/coronavirus-update-schools-vaccine-texas-march-16-2020/285-932d74d7-b5f0-4781-9295-b048671ad7aa.

[9]  *See* Paul Takahashi, "Star Cinema Grill to temporarily close as movie theaters feel coronavirus impact," THE HOUSTON CHRONICLE (Mar. 17, 2020), https://www.houstonchronicle.com/business/article/Star-Cinema-Grill-to-temporarily-close-as-movie-15137543.php; Star Cinema Grill, "COVID-19 Update," https://www.starcinemagrill net (pop-up notification appearing on SCG's website).

[10]  Ill. Exec. Order No. 2020-10 (Mar. 20, 2020), *available at* https://www2.illinois.gov/documents/execorders/2020/executiveorder-2020-10.pdf.

[11]  *See, e.g.,* KHOU 11, "These Houston-area counties have issued stay-at-home orders" (Mar. 25 & 27, 2020), https://www.khou.com/article/news/health/coronavirus/coronavirus-texas-counties-stay-at-home-orders/285-c4b0f79b-90ec-48c1-bb84-bf4b9d7cc0d4.

[12]  *Id.*

[13]  *See* White House Press Briefing, "Remarks by President Trump, Vice President Pence, and Members of the Coronavirus Task Force in Press Briefing" (Mar. 29, 2020), https://www.whitehouse.gov/briefings-statements/remarks-president-trump-vice-president-pence-members-coronavirus-task-force-press-briefing-14/.

are considered "hot spots" for COVID-19 are required to self-quarantine for a period of 14 days.[14]
These cities include, among others, Chicago and Miami.[15]

### D.      The Status Of The EPA

On March 24, 2020, Cinemex informed Plaintiffs that closing could not proceed because the following conditions had not been satisfied:  (1) Cinemex's inspection of, *inter alia*, the SCG Theaters; and (2) Cinemex's ability to meet with Plaintiffs' Corporate Employees, including those managing the SCG Theaters.  (Compl. ¶ 45.)  Specifically, Cinemex's counsel sent an email to Plaintiffs' counsel explaining that Cinemex could not close because "[a]ttempting to close under these circumstances would imperil Cinemex personnel."  (Compl. ¶ 45; Ex. H.)

On March 26, 2020, Cinemex sent SCG a letter that further explained that two critical terms of the EPA had not been, and could not be, satisfied.  (Compl. ¶ 47.)  Cinemex reminded SCG that Section 3.1 of the EPA required that closing "shall take place . . . in Houston, Texas" and that a physical closing in Houston was required because Cinemex had not had the opportunity, either before the EPA was signed on March 10 or thereafter, to conduct a detailed inspection of the theaters.  Cinemex further pointed out that the sellers could not satisfy the covenant in Section 7.2 of the EPA, requiring them to provide Cinemex with "reasonable access to and the right to inspect all of the properties, assets, [and] premises."  (Compl. ¶ 52; Exs. A, F.)

---

[14]  *See* Proclamation, Office of the Texas Governor, "Governor Abbott Issues Executive Order Mandating 14-Day Quarantine For Travelers Arriving From CA, LA, WA, Atlanta, Chicago, Detroit, and Miami" (Mar. 30, 2020), https://gov.texas.gov/news/post/governor-abbott-issues-executive-order-mandating-14-day-quarantine-for-travelers-arriving-from-ca-la-wa-atlanta-chicago-detroit-and-miami ("WHEREAS, on March 26, 2020, Executive Order GA-11 imposed *a mandatory self-quarantine of 14 days for air travelers flying to Texas* from certain areas experiencing substantial community spread of COVID-19 . . . I, Greg Abbott, Governor of Texas, by virtue of the power and authority vested in me by the Constitution and laws of the State of Texas, do hereby add the following states and cities, effective at noon on March 30, 2020, to the list set forth in Executive Order GA-11 [listing California, Louisiana, Chicago and Miami, among others]") (emphasis added).

[15]  *Id.*

## NATURE AND STAGE OF PROCEEDINGS

Plaintiffs filed the complaint (the "Complaint") on April 2, 2020, asserting a single count: breach of contract against Cinemex.  (ECF No. 1.)  In its prayer for relief, the Complaint sought (1) an order against Cinemex to specifically perform its obligations under the EPA and proceed to the Closing of the Transaction; (2) preliminary and permanent injunctive relief requiring Cinemex to close the Transaction as set forth in the EPA; (3) an order against Cinemex to pay any additional damages suffered by Plaintiffs as a result of Cinemex's alleged breach of the EPA, in an amount to be determined at trial; (4) an award of costs and attorneys' fees; and (5) other and further relief as the Court deems just and proper.  (*Id.* at 20.)

On April 8, 2020, Plaintiffs filed (1) a motion for expedited injunctive relief and specific performance ("Expedited Injunctive Relief Motion") (ECF No. 6); and (2) a motion for accelerated briefing and hearing on the Expedited Injunctive Relief Motion ("Accelerated Briefing and Hearing Motion").  (ECF No. 8.)

On April 10, 2020, Cinemex filed a response to the Accelerated Briefing and Hearing Motion.  (ECF No. 10.)  On the same day, the Court held a telephonic hearing on the Accelerated Briefing and Hearing Motion, during which the Court granted Plaintiffs' motion in part, setting an accelerated briefing and hearing schedule, but extending the time for Cinemex's response and Plaintiffs' reply and permitting Cinemex an opportunity for a sur-reply.  (ECF Nos. 11, 18.) Pursuant to the Court-ordered schedule, Cinemex filed its response to the Expedited Injunctive Relief Motion on April 17, 2020.  (ECF No. 26.)

On April 21, 2020, the Court held the second telephonic hearing, the purpose of which was to discuss the forthcoming hearing on the Expedited Injunctive Relief Motion, which is scheduled to start on April 27.  (ECF No. 21.)

On April 22, 2020, Plaintiffs filed a reply in support of their Expedited Injunctive Relief Motion.  (ECF No. 34.)  Cinemex will file its sur-reply on April 24, 2020.

## LEGAL STANDARD

Dismissal for failure to state a claim is appropriate "'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief.'"  *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007)).  "Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (internal quotation marks omitted).  "[T]he factual allegations must allow for an inference of more than a sheer possibility that a defendant has acted unlawfully."  *Little v. SKF Sverige AB*, No. H–13–1760, 2014 WL 710941, at *6 (S.D. Tex. Feb. 24, 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted).  "The court should not strain to find inferences favorable to the plaintiffs or accept conclusory allegations, unwarranted deductions, or legal conclusions." *Toscano v. United Parcel Service*, No. 4:14-CV-2680, 2015 WL 2089660, at *1 (S.D. Tex. Apr. 28, 2015) (quoting *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005)) (internal quotation marks omitted).

## ARGUMENT

## I.    PLAINTIFFS FAILED TO SATISFY CONDITIONS PRECEDENT TO CLOSING

Under Delaware law, which governs the agreements here, *see* EPA § 12.7, if a condition precedent is not satisfied, then performance under a contract is not required, and there can be no claim for breach of contract.  *See, e.g.*, *Munro v. Beazer Home Corp.*, No. CIV. U608-03-081, 2011 WL 2651910, at *5 (Del. Com. Pl. June 23, 2011).  Here, Plaintiffs failed to meet the

conditions precedent to (a) provide reasonable access to property and employees, and (b) provide truthful representations and warranties that they are authorized to operate their business.

### A.  Plaintiffs Failed To Provide Reasonable Access To Property And Employees, As Required By Sections 7.2 And 7.9

Based on their own allegations, Plaintiffs did not satisfy the conditions precedent that they provide reasonable access to property and employees.  Section 7.2 of the EPA states:  "From the date hereof [March 10, 2020] until the Closing . . . the [Plaintiffs] shall . . . afford [Cinemex] and its counsel, accountants and other authorized agents and representatives (collectively, 'Representatives') reasonable access to and the right to inspect all of the properties, assets, [and] premises . . . ."  EPA § 7.2.  Similarly, Section 7.9 states:  "From and after the date hereof [March 10, 2020] until Closing Date, the [Plaintiffs] shall provide [Cinemex] with reasonable access to each Corporate Employee . . . , and [Cinemex] may conduct interviews and discussions with such Corporate Employees regarding employment with [Cinemex]."  *Id.* § 7.9.  Thus, the EPA is unequivocal in requiring that Plaintiffs provide reasonable access to property and employees.

Cinemex did not have physical access to Plaintiffs' properties, assets, premises, and employees from March 10, 2020 until the closing date, which Plaintiffs allege to be March 26 (or April 10 as to SCG-N).  (Compl. ¶ 44.)  Indeed, physical access was impossible for most of that period (and remains impossible) because government orders shut down the movie theaters and required that all people stay at home for non-essential activities before those closing dates.  *See supra* notes 9, 10.  Plaintiffs do not allege otherwise.  Instead, Plaintiffs allege that Cinemex had physical access for some undefined *portion* of the time between the agreements were signed and the closing dates.  (Compl. ¶ 55); *see also* ECF No. 34 at 7 (arguing that Cinemex could have traveled to Houston on or before March 17, 2020).  However, this access for part of the time does not suffice under the plain language of the agreements.  The EPA requires that Plaintiffs provide

access "*until* the Closing," EPA § 7.2 (emphasis added), and "*until* Closing Date," *id.* § 7.9

(emphasis added).  Thus, access must be provided *throughout* the closing period and Plaintiffs did

not provide it.[16]

The failure to meet these requirements constitutes a failure to satisfy a condition precedent

to closing.  Under Section 8.1 of the agreements:

> The obligation of Buyer to consummate the purchase of the Equity Interests is
> subject to the satisfaction (or waiver by Buyer) of the following conditions as of
> the time of the Closing: . . . (B) The [Plaintiffs] will have performed and complied
> (or shall have cured any non-performance or non-compliance) with all of the
> covenants and agreements required to be performed by the [Plaintiffs], as the case
> may be, hereunder or under any of the Transaction Documents at or prior to the
> Closing."

EPA § 8.1(B).  Because Cinemex's obligation to close is "subject to" the "conditions" in Section

8.1, they are conditions precedent as a matter of law.  *See, e.g.*, *Novipax Holdings LLC v. Sealed*

*Air Corp.*, No.: N17C-03-1682 EMD CCLD, 2017 WL 5713307, at *4 (Del. Super. Ct. Nov. 28,

2017) (interpreting a similar provision as a condition precedent to closing); *Munro*, 2011 WL

2651910, at *5 (noting that even more ambiguous language, like "if" and "provided that," is

sufficient to create a condition precedent).  Sections 7.2 and 7.9 are, by their terms, two of the

covenants that Plaintiffs were required to perform.  Thus, Cinemex had no contractual duty to

consummate the purchase until Plaintiffs comply with (and cure non-compliance with) those

requirements, which has not occurred.[17]

---

[16]  To the extent Plaintiffs rely on the word "reasonable" here to justify providing access only during part of the period before closing (ECF No. 34 at 7), this likewise fails because the "reasonable access" must be provided until the closing. Thus, providing *no* access for much of the time before the closing does not suffice under the EPA.  In addition, while Plaintiffs now argue that Cinemex did not use commercially reasonable best efforts to bring about the closing (*id.* (citing EPA § 8.3)), Plaintiffs made no such allegation in their Complaint.  Indeed, there is no plausible basis to treat as commercially unreasonable Cinemex's demand to inspect the properties to be purchased before closing, and Cinemex's refusal to defy governmental orders to complete that inspection.

[17]  In their reply brief in support of their motion for expedited relief, Plaintiffs argue that the inability to inspect the theaters does not matter because it would not excuse performance (ECF No. 34 at 8), but they cite nothing in the EPA for this proposition because the EPA expressly makes the provision of access a condition precedent to closing.

To the extent Plaintiffs suggest that they did what they could given the limitations caused by the pandemic (Compl. ¶ 56), that argument is irrelevant under the agreements.  There is nothing in the agreements to suggest that the failure to meet these conditions precedent is excused if Plaintiffs were not at fault.  And unlike other provisions that require only "commercially reasonable efforts" to complete a particular requirement, *see* EPA § 7.1(A), there is no such limitation here; Plaintiffs "shall" provide the required access, *see id.* §§ 7.2, 7.9.  Moreover, while the agreements state that a pandemic is not a defined "Material Adverse Effect," *id.* at 9, Section 8.1(B) makes the covenants in Article VII conditions precedent ***without*** requiring that a Material Adverse Effect also exists.  Thus, the parties did not agree or suggest that a pandemic excused failures to meet these conditions precedent.

Plaintiffs' Complaint attempts to excuse their failure on this issue by positing that "reasonable access" does not include physical access. (Compl. ¶ 52.)  However, access to property and people necessarily means being in the same place as the property and people.  There is no plain meaning of "reasonable access" to properties and individuals such that a party can provide ***no access*** and instead offer to provide a video as a replacement for such access.  And this makes sense because a party obviously would want to see in person the physical thing it is purchasing before completing the purchase.  That is especially true here:  as discussed *supra* at 3, Cinemex signed the agreements after only one week of negotiation and without inspecting the properties (including a movie theater under construction) only because it bargained for robust closing conditions entitling it to inspect all aspects of the business.  A video from someone's smartphone

---

Whether and when closing could occur after the inspection would, of course, depend on what was found during the inspection.

is not what Cinemex bargained for, and it is more than reasonable for Cinemex not to spend $█

million based on a look via someone's camera phone.

Indeed, the EPA specifically refers to access to "premises," and access to premises—*i.e.*, land and buildings—necessarily means that the party can actually walk onto the premises.  Here, Cinemex could not do so, as they were entitled to under the agreements as a prerequisite to closing. Simply put, in the absence of a pandemic, there is no doubt that allowing only a video would not be considered "access" to property and people, and as discussed above, the agreements do not modify the access requirement for a pandemic.

**B.**     **Plaintiffs Breached Their Obligation To Provide Truthful Representations And Warranties**

Plaintiffs failed to satisfy the required conditions precedent for the additional and independent reason that their representations and warranties were false at the time that closing was set to occur.  Section 5.16(B) states:  "To the [Plaintiffs'] knowledge, the [Plaintiffs are] in possession of, and at all times ha[ve] possession of, and immediately following the Closing will hold, all . . . authorizations, . . . consents, . . . approvals and orders necessary to . . . operate its properties, to carry on its Business (collectively, the '**Company Group Permits**')."  EPA § 5.16(B).  Plaintiffs also represented that the Company Group Permits are all "in full force and effect," that "no event has occurred that . . . would reasonably be expected to result in the revocation, suspension, lapse or limitation of any Company Group Permit," and that "no member of the [Plaintiffs] has received any written notice to the contrary."  *Id.*  Thus, Plaintiffs represented that they have authorization to operate their business, and that no event has occurred or written notice received that would change that authorization.

Here, Plaintiffs do not have authorization to carry on their business.  As explained *supra* at 4-5, due to the government shut-down orders, Plaintiffs now cannot by law operate their theaters.

And they clearly are aware of the event causing that revocation of authority, and received notice of that revocation.  Plaintiffs make no allegation to the contrary.

Moreover, it does not matter that the representations were true at the time they were made. As the EPA states, the "representations and warranties set forth in ARTICLE 4 and ARTICLE 5 will be true and correct . . . *as of the time of the Closing as though then made* (except those representations and warranties that address matters only as of a specified date . . . .)."  EPA § 8.1(A)(i) (emphasis added).  Since the representations at issue in Section 5.16(b) do *not* claim to address matters only as of a specific date, they therefore must be true and correct as of the closing date.  And they were undisputedly not true and correct as of that date.

The falsity of the representations constitutes a failure of a condition precedent to the closing. The EPA states:

> The obligation of Buyer to consummate the purchase of the Equity Interests is subject to the satisfaction (or waiver by Buyer) of the following conditions as of the time of the Closing:  (A) . . . (ii) each of the other representations and warranties set forth in ARTICLE 4 and ARTICLE 5 will be true and correct (in each case disregarding any limitations as to materiality or "Material Adverse Effect" therein) as of the time of the Closing as though then made . . . , except . . . where the failure of such representations and warranties to be true and correct would not, in the aggregate, have a Material Adverse Effect . . . .

EPA § 8.1(A)(ii).[18]  Thus, under this provision, the truth of the representations and warranties at the time of closing is listed as a "condition[]" precedent to closing.  The only exception is where the falsity of the representations and warranties would not have a Material Adverse Effect.  Here, there is a Material Adverse Effect because the inability to operate the business constitutes a "change, development, event, occurrence, fact, circumstance or condition, that . . . has or is

---

[18]  Section 8.1(a)(i) refers to designated "Company / Equityholder Fundamental Representations" that are not at issue in this motion to dismiss.

reasonably likely to have (a) a material adverse effect upon the financial condition, business or results of operations of [Cinemex]." *Id.* at 9 (defining Material Adverse Effect).

Plaintiffs' response seems to be that there is no Material Adverse Effect because there is a limitation on Material Adverse Effect for pandemics and matters affecting the U.S. economy or Plaintiffs' industry as a whole. *See* Compl. ¶ 38; ECF No. 34 at 5. However, the limitations on Material Adverse Effect do not apply to representations and warranties. Instead, the EPA states (in language Plaintiffs ignore) that the representations and warranties must be true "***disregarding any limitations*** as to materiality or 'Material Adverse Effect' therein." EPA § 8.1(A)(ii) (emphasis added). Thus, the parties expressly chose not to limit Material Adverse Effect for purposes of treating the truthfulness of the representations as a condition precedent. And disregarding any limitations, there is no question that the falsity of the representations is material and has a Material Adverse Effect.

Furthermore, the limitations on Material Adverse Effect are also inapplicable here because those limitations concern only what can be "taken into account . . . in determining whether a Material Adverse Effect has occurred." EPA at 9. Here, Cinemex is not asking to "take into account" the pandemic or changes to the U.S. economy or the movie theater industry. Rather, Cinemex's argument relies solely on the representation itself that Plaintiffs have authorization to operate their business. The question is whether "the failure of such representations and warranties to be true and correct . . . have a Material Adverse Effect . . . ." EPA § 8.1(A)(ii). And the falsity of the representation that Plaintiffs have authorization to operate their business has a Material Adverse Effect regardless of whether the pandemic (or its effects) separately constitute a Material Adverse Effect. Indeed, any other interpretation would be nonsensical because Section 8.1(E) already makes the lack of any Material Adverse Effect a condition precedent to closing. Thus, for

Section 8.1(A)(ii) to have any meaning, it must be that the truthfulness of a representation itself constitutes a condition precedent even where the reason for its falsity does not separately constitute a Material Adverse Effect.  *See Achaian, Inc. v. Leemon Family LLC*, 25 A. 3d 800, 808 n.38 (Del. Ch. 2011) (quotation marks omitted) ("Contractual interpretation operates under the assumption that the parties never include superfluous verbiage in their agreement, and that each word should be given meaning and effect by the court.").

## II.   FRUSTRATION OF PURPOSE AND IMPOSSIBILITY EXCUSE CINEMEX'S PERFORMANCE

Plaintiffs fail to plead that Cinemex breached the EPA because the doctrines of frustration of purpose and impossibility excuse Cinemex's performance under the EPA.

### A.   The Purpose Of The Agreements Has Been Frustrated By The Closures Of Plaintiffs' Business, And Thus Cinemex Is Not Obligated To Close

As reflected in the Complaint and throughout the agreements, the principal purpose of the agreements was for Cinemex to become the owner of 11 *operating* movie theaters.  (Compl. ¶ 2.) Less than a week later, however, the government issued unprecedented orders closing movie theaters for an indefinite period of time to attempt to stop the spread of COVID-19, substantially frustrating the principal purpose of the agreements.  While frustration of purpose is not applied lightly, *see Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 872 A.2d 611, 621 (Del. Ch. 2005), *aff'd in part, rev'd in part on other grounds*, 901 A.2d 106 (Del. 2006), this is the prototypical case for application of the doctrine.  Where, as here, an unexpected government order makes a contract valueless or unfair to one party, courts around the country have applied frustration of purpose to excuse performance of an agreement.  *See, e.g.*, *Texas Co. v. Hogarth Shipping Corp.*, 256 U.S. 619, 629-30 (1921) (excusing ship owner's performance where its ships were requisitioned for use in the British navy); *Unihealth v. U.S. Healthcare, Inc.*, 14 F. Supp. 2d 623, 635 (D.N.J. 1998) (excusing performance where the government ended its hospital billing system and where the

parties should have assumed that the billing rates under the system would fluctuate but not that the system would end); *Sch. Dist. No. 16 of Sherman Cty. v. Howard*, 98 N.W. 666, 666-67 (Neb. 1904) (where school was shut down by Board of Health due to smallpox outbreak, school district was released from paying teacher's wages).

Delaware law follows the general common law definition of this doctrine, such that frustration of purpose exists where there is a "(1) substantial frustration of the principal purpose of the contract; (2) that the nonoccurrence or occurrence of the frustrating event was a basic assumption upon which the contract was made; and (3) no fault on the part of the defendant." *Chase Manhattan Bank v. Iridium Africa Corp.*, 474 F. Supp. 2d 613, 620 (D. Del. 2007); *see also* Restatement (Second) of Contracts § 265, cmt. a (1981) ("First, the purpose that is frustrated must have been a principal purpose of that party in making the contract . . . Second, the frustration must be substantial . . . Third, the non-occurrence of the frustrating event must have been a basic assumption on which the contract was made . . ."). Based on Plaintiffs' own allegations and judicially noticeable facts, all three elements are satisfied here.

*First*, the principal purpose of the agreements has been substantially frustrated. The undisputed purpose of the agreements was to acquire a business, and that business is no longer operating, as the movie theaters have been shut by government order for the past month. "When people enter into a contract which is dependent for the possibility of its performance on the continual availability of a specific thing, and that availability comes to an end by reason of circumstances beyond the control of the parties, the contract is prima facie regarded as dissolved." *Greek Catholic Congregation of Borough of Olyphant v. Plummer*, 12 A.2d 435, 439 (Pa. 1940). There is no question that the purpose of an agreement to sell a functioning business has been substantially frustrated where, as here, the business cannot operate for an indefinite period of time.

16

Notably, Plaintiffs do not dispute this element in their reply in support of their motion for injunctive relief.  (ECF No. 34 at 8-11.)

*Second*, the operation of the business was a basic assumption on which the agreements were made.  Plaintiffs allege that the parties foresaw the possibility of a pandemic when they signed the agreements on March 10, 2020.  (Compl. ¶¶ 37-39.)  However, regardless of whether the parties foresaw the possibility of a pandemic, the parties did not foresee the extreme and unprecedented shutdown that has occurred.  When the agreements were signed, the government suggested that the effects of the COVID-19 outbreak would (and could) be limited—all of the relevant governmental orders shutting down movie theaters and requiring people to stay at home (aside from essential activities) were issued after the agreements were signed.  *See supra* at 4.  Moreover, the agreements themselves establish that the parties did ***not*** foresee the possibility of government orders shutting down the U.S. economy and closing all theaters.  As discussed above, the agreements presuppose that Cinemex can access the properties until closing, that Plaintiffs would have authority to operate their theaters at the time of closing, and that the closing would occur in Houston.  None of these assumptions would make sense if the parties foresaw that the theaters would be closed and travel would be essentially impossible.

*Third*, Cinemex is not at fault for the frustration of purpose.  To the extent Plaintiffs contend that Cinemex's refusal to close is through its own fault (Compl. ¶¶ 49-56), even assuming that were true, it is irrelevant on this issue.  The question is not generally whether Cinemex is at fault, but whether its fault caused the frustration of purpose.  *See, e.g.*, *Kroblin Refrigerated Xpress, Inc. v. Pitterich*, 805 F.2d 96, 102 (3d Cir. 1986) (cited in *Chase Manhattan Bank*, 474 F. Supp. 2d at 620).  And Cinemex is clearly not responsible for government orders shutting down movie theatres, which is the basis for the frustration of the purpose of the agreements.

17

## B.      Cinemex Has No Obligation To Close Because Performance Of The Agreements Is Impossible

Cinemex has no obligation to close because performance of the agreements is impossible due to travel restrictions and stay-at-home orders.  Under the doctrine of impossibility, a promisor is released from liability for breach of contract when further performance is impossible.  *Martin v. Star Publishing Co.*, 126 A.2d 238, 242 (Del. 1956).  "The Restatement defines 'impossibility' as something that is impracticable because of extreme and unreasonable difficulty, expense, injury or loss."  *Mueller v. Marvel*, No. 03-07-110, 2004 WL 7325622, at *3 (Del. Com. Pl. Dec. 8, 2004) (citing Restatement Contracts § 454 (1932)) (finding impossibility where a chicken house which was the subject of a lease collapsed because of age, thereby rendering the use of the building by defendant for storage and retrieval of products impossible). "The party must demonstrate that the obligation under the contract cannot be performed by any means."  *Bell Atl. Dir. Servs., Inc. v. Delaware Law Ctr., Inc.*, No. CRIM.A.1997-07-083, 2000 WL 33654061, at *1 (Del. Com. Pl. Dec. 14, 2000).  The Delaware Supreme Court recognizes cases of "impossibility due to domestic law." *Martin v. Star Publishing Co.*, 126 A.2d 238, 242 (Del. 1956) (citation omitted).[19]

Here, the conditions precedent are impossible to meet.  It is impossible for Plaintiffs to satisfy their obligation to provide Cinemex with reasonable access to property and people, as discussed *supra* Part I.A.  Moreover, even if Plaintiffs could provide such access, key personnel from Cinemex are located in Miami and cannot get to Houston given the stay-at-home orders in place and the self-quarantine requirement for travelers from Miami.  *See supra* at 6.  Indeed, impossibility is the only excuse Plaintiffs have for failing to provide the required access,

---

[19]   The impossibility must also be "fortuitous" and not the result of the promisor's own volition.  *Martin v. Star Publishing Co.*, 126 A.2d 238, 242 (Del. 1956).  Impossibility, just like the frustration of purpose, was not foreseeable or the fault of Cinemex.  While Plaintiffs suggest that Cinemex did not exercise commercially reasonable efforts to close (ECF No. 34 at 7), the Complaint does not allege (nor could it) that it would be commercially unreasonable to require a closing in the place chosen by the parties in the agreements.

notwithstanding that the parties supposedly anticipated the pandemic.  But if the impossibility of complying with Plaintiffs' obligations and the unforeseeability of the impediment to compliance is relevant, then it equally applies to Cinemex's obligations.  Accordingly, because it is impossible to perform the agreements as written, Cinemex has no obligation to close.

## **CONCLUSION**

For the reasons set forth above, Cinemex respectfully requests that the Court grant this Motion to Dismiss, and dismiss Count I of the Complaint with prejudice (or, in the alternative, without prejudice).

Dated:      April 23, 2020                                        Respectfully submitted,

/s/ Patricia B. Tomasco
Patricia B. Tomasco (attorney in charge)
Texas State Bar No. (01797600)
Federal ID No. (10521)
Email: pattytomasco@quinnemanuel.com

QUINN, EMANUEL, URQUHART &
SULLIVAN, LLP
711 Louisiana Street, Suite 500
Houston, TX 77002
Telephone:      (713) 221-7010
Facsimile:      (713) 221-7100

/s/ Juan P. Morillo
Juan P. Morillo
*Pro Hac Vice* granted.
Email: juanmorillo@quinnemanuel.com

/s/ Derek L. Shaffer
Derek L. Shaffer
*Pro Hac Vice* granted.
Email: derekshaffer@quinnemanuel.com

/s/ Gabriel F. Soledad
Gabriel F. Soledad
*Pro Hac Vice* granted.
Email: gabrielsoledad@quinnemanuel.com

19

QUINN, EMANUEL, URQUHART &
SULLIVAN, LLP
1300 I Street, NW, Suite 900
Washington, D.C. 20005
Telephone:      (202) 538-8000
Facsimile:      (202) 538-8100

*Attorneys for Defendants Cinemex USA Real Estate
Holdings, Inc. and Cinemex Holdings USA, Inc.*

## **CERTIFICATE OF CONFERENCE**

I certify that on April 22, 2020, I conferred with Jeff M. Golub and Nick Gorga, counsel

for Plaintiffs, regarding the issues in this motion, and the parties could not agree that the pleading

deficiency could be cured in any part by a permissible amendment offered by the pleading party.


/s/ Gabriel F. Soledad
By: Gabriel F. Soledad


## **CERTIFICATE OF SERVICE**

I certify that this motion has been served on counsel of record by the Court's ECF system

on April 23, 2020.

/s/ Juan P. Morillo
By: Juan P. Morillo