**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| OMAR KHAN, S.C.G.C. INC., a Texas corporation, S.C.G.M. INC., a Texas corporation, SCG-B INC., a Texas corporation, SCG-VP INC., a Texas corporation, DISTRICT THEATERS INC., a Texas corporation, SCG-WR LLC., a Texas limited liability company, SCG-CS INC., a Texas corporation, SCGK INC., a Texas corporation, SCG-SW INC., a Texas corporation, SCGWL INC., a Texas corporation, and SCG-N INC., a Texas corporation, | **Case No. 20-cv-01178** **Hon. Andrew Hanen** |
| Plaintiffs, | |
| v. | |
| CINEMEX USA REAL ESTATE HOLDINGS, INC., a Delaware Corporation, and CINEMEX HOLDINGS USA, INC., a Delaware Corporation, | |
| Defendants. | |

**PLAINTIFFS' RESPONSE TO THE COURT'S APRIL 25TH ORDER**

# I.    INTRODUCTION

After committing a bad-faith breach of the EPA, CMX faced an April 27th hearing where none of its key personnel were willing to remotely offer testimony under oath to support CMX's positions in this case.  CMX elected instead to file a petition for Chapter 11 bankruptcy solely to avoid the likelihood that the Court would have ordered injunctive relief, potentially including compelling CMX to specifically perform its obligations under the EPA.  The bankruptcy filing is just the latest attempt by CMX—who, of course, is ultimately backed by its multi-billionaire owner German Larrea, the third richest man in Mexico—to evade its responsibilities and instead inflict additional harm on Plaintiffs.  Had the hearing proceeded and had the Court ordered CMX to close the transaction, Plaintiffs would have at least had a liquidated claim in any subsequent bankruptcy pursued by CMX.  Instead, CMX filed its bankruptcy petition on the eve of the hearing solely to try to escape this Court's equitable powers and to limit Plaintiffs' chances of receiving any relief through bankruptcy proceedings.  Plaintiffs intend to do whatever possible in the bankruptcy proceedings to prevent CMX from trying to avoid honoring its agreement to purchase Star Cinema Grill.

As discussed below, CMX has tried at every turn to delay this litigation—unsuccessfully, of course, as the Court twice denied their requests to delay the hearing.  CMX did this by making false statements to the Court and obstructing what should have been an issue of contractual interpretation, one which the Court would have been more likely to determine without the need for an evidentiary hearing.  Because CMX misled this Court and potentially delayed a ruling that would have significantly altered Plaintiffs' rights in any subsequent bankruptcy proceeding, it would be a miscarriage of justice to allow CMX to abuse the bankruptcy process to escape this Court's jurisdiction.

That said, unfortunately, in the two days since the Court requested this brief, Plaintiffs have not yet uncovered any binding authority that would permit the Court to proceed at this point given the automatic stay in place.  Plaintiffs intend to pursue their claim in the bankruptcy proceeding and look forward to the

1

opportunity to request that the bankruptcy court permit Plaintiffs to pursue their claims against Defendants in either this Court or the bankruptcy court. Defendants committed an egregious breach of the EPA, acted throughout the process in bad faith in an attempt to destroy the business of this local Houston entrepreneur, and they and their multi-billionaire financier should not be permitted to shirk their responsibilities.

## II.     ARGUMENT

**A.     CMX Knowingly Made False Statements to Block the Court's Finding that CMX Breached the EPA as a Matter of Law.**

Ever since revealing, on March 24, that it would not close the transaction, CMX's excuse has been a supposed lack of access to Plaintiffs' theaters and the inability to close the transaction in Houston due to certain unidentified individuals being unable to travel from Mexico to the United States. Plaintiffs' position throughout has been that there were no travel restrictions that would have prevented CMX from traveling to Houston between March 10 and March 26. CMX denied this, both in its papers and in speaking to the Court during the April 10th hearing.

First, in its Response to Plaintiffs' Motion for Accelerated Briefing and Hearing (Dkt. 10) filed on April 10, CMX represented to the Court that "most of the key Cinemex personnel involved in this transaction are located in Mexico," and that travel restrictions on Cinemex "make an in-person hearing impossible in the near future." Then, during the hearing on April 10, the Court asked CMX why the transaction could not be closed. CMX's counsel responded that the "Cinemex people **can't travel to Houston because they're in Mexico**." (Tr. of April 10th Hrg. at 15.) When pressed again by this Court as to why CMX was not able to walk through the theaters, CMX's counsel stated again during the hearing, "I suppose if the people were here they could, but the people can't travel. They're in Mexico." (*Id*. at 22.) Finally, in its April 17th Response to Plaintiffs' injunction motion, CMX reiterated the excuse it made in a March 24th email to Plaintiffs, stating that "key personnel are **located in Mexico City and cannot get to Houston** regardless because the US/Mexico border is closed," but now going further by stating that "a

physical close in Houston is **impossible,**" and that it would be "unlawful" for CMX to travel to Houston. (Resp. at 5, 10) (emphasis added.))

To be sure, all of these statements are plainly *false*. There has never been any border restriction that would have prevented CMX personnel from "traveling to work in the United States" or "engag[ing] in lawful cross-border trade."[1] CMX knows this, of course. After Plaintiffs pointed out the false statements, CMX conspicuously abandoned this argument in its Motion to Dismiss and in its Sur-Reply brief.

Aside from CMX's statements about the non-existent travel restrictions, CMX's CEO, Jose Leonardo Marti, made additional false statements in his sworn affidavit regarding whether CMX had any inkling of or discussed the possibility of SCG's theaters closing due to the Coronavirus. In discussing a March 6 conversation that he had with Richard Brail from PJ Solomon (who was prepared to testify during the evidentiary hearing), Mr. Marti states that "there was no discussion whatsoever during that call, or any time before the EPA was signed, that the SCG theaters would be forced to shut down completely for an indefinite period of time." But a text message from Mr. Brail to Mr. Marti that same day shows that Mr. Marti's statement in his affidavit was simply not true. (*See* Ex. A (Text Message).) In the text message, Mr. Brail informs Mr. Marti that "if the CDC or government mandates theater closures, Omar believes that SCG is covered by business interruption insurance." This clearly shows that the parties did in fact discuss the possibility of a shutdown of SCG's theaters—and that Mr. Marti may have perjured himself.

## B.    CMX Should Not Benefit from Misleading the Court

CMX manufactured a factual dispute by claiming—as the sole reason for not closing—that CMX personnel could not travel from Mexico to Houston to access the premises. Had CMX instead been

---

[1] *See* https://mx.usembassy.gov/wha-press-guidance/. Moreover, these restrictions apply only to land-based travel—there is no restriction on air travel. *Id.* In other words, from the time it signed the EPA on March 10 until *at least* March 24 (when Harris County issued its stay at home order (*see* Resp. at 11 n.4)), CMX personnel could have traveled unrestricted by plane to the U.S.

forthcoming, it is possible that the Court could have found that CMX breached the EPA as a matter of law without the need for a hearing.  Instead, CMX was able to further its goal of delaying proceedings as much as possible to terminate the EPA on the Drop Dead date.  Once it was clear that CMX's delay tactics, ever-changing legal counsel, and posturing would not achieve its goal of pushing back the evidentiary hearing, CMX decided to use the U.S. bankruptcy laws as a last resort to further escape its obligations.

The timing of CMX's bankruptcy itself is questionable, at best, in light of the circumstances of this lawsuit and the looming evidentiary hearing.  Plaintiffs are not aware of any other proceedings or claims by creditors against CMX.  Moreover, CMX disclosed its financial statements to Plaintiffs in connection with the transaction.  CMX maintained a much stronger financial position compared to other large, publicly-traded cinema operators, like AMC Theaters, which sought available financing to stave off bankruptcy from the pandemic-induced recession.[2]  Yet CMX is the first major theater operator to file for bankruptcy, having done so on the eve of the evidentiary hearing in this case.   Indeed, the filing is highly unusual, given that CMX filed under Chapter 11 of the Bankruptcy Code, and that all of CMX's approximately $66 million debt is unsecured.  (*See* Ex. B (List of Creditors).)  Even more peculiar is that, of the total $66 million in unsecured debt, $45 million is made up of five $9,000,000 loans to five different banks—all located in Mexico.  Given CMX's actions to date, it is reasonable to view this ill-timed bankruptcy with skepticism.

### III.    CONCLUSION

Ultimately, however, Plaintiffs have been unable to find any authority that would allow the Court to grant its request for injunctive relief today in light of the automatic stay.  This truly is unfortunate, as the effect on this local Houston entrepreneur will be far more profound than on CMX and its multi-billionaire

---

[2] *See, e.g.,* https://www.vanityfair.com/hollywood/2020/04/amc-bankruptcy-reports

Mexican owner.  Plaintiffs resolve to do what they can in the bankruptcy proceedings to hold Defendants

accountable for egregiously breaching the EPA.


Dated: April 27, 2020                    Respectfully submitted,

                                         /s/Jeff M. Golub (with permission)

                                         Jeff M. Golub
                                         (attorney in charge)
                                         State Bar No. 00793823
                                         BECK REDDEN LLP
                                         1221 McKinney Street, Suite 4500
                                         Houston, TX 77010
                                         (713) 951-6281
                                         (713) 951-3720
                                         jgolub@beckredden.com

                                         **OF COUNSEL:**

                                         Nick Gorga (admitted *pro hac vice*)
                                         Mohamed Awan (admitted *pro hac vice*)
                                         HONIGMAN LLP
                                         2290 First National Building
                                         660 Woodward Avenue
                                         Detroit, MI 48226-3506
                                         (313) 465-7000
                                         ngorga@honigman.com
                                         mawan@honigman.com